Case of Corbin et al. v. Allstate Corporation 517-0296 Parties ready? You may proceed when ready. Good afternoon. Good afternoon. My name is Kathleen Borain, and along with my colleague, Troy Votar, I represent the Allstate Companies. I'm going to try really hard not to be intimidated by this amazing courtroom where I just found that our former president, Lincoln, actually argued. So this is really quite an impressive space. Yes, he argued a tax case here. Unbelievable. Just unbelievable. Well, welcome. It's actually quite an emotional experience actually stood where he stood. So I particularly want to thank the Court for providing the opportunity under 308 to address the critical threshold issue of whether plaintiffs can, consistent with the file break doctrine and the primary jurisdiction doctrine, maintain this putative class action lawsuit. The file break doctrine prohibits collateral attacks on rates that are established via a legislatively mandated regulatory process. And the primary jurisdiction doctrine requires that disputes as to matters that fall within the jurisdiction of a regulatory agency be directed to that agency for resolution, particularly where they involve matters that require regulatory expertise and uniform resolution. Both of these doctrines serve the purpose of, first of all, assuring that a legislatively mandated process is not undermined and a regulator's jurisdiction is preserved. Secondly, to assure that rate oversight is consistent. And third, to assure that rate oversight is conducted by experts. The plaintiff's complaint triggers both of these doctrines. Allstate is an insurance company. It sells private passenger auto insurance in Illinois. It is required to file those rates. And once it files those rates, it is required to use those rates and no other rates unless a new filing is made. But is there a regulatory process for determining the fairness of those rates through a hearing? The Illinois legislature made the determination in 1971 that auto insurance rates would not be subject to a process that includes an affirmative approval of the rate amount by the director of insurance. There are three kinds of rate regulation that exist across the states. One kind of regulation is a regulation of the amount of the rate according to a set of standards. Nowhere are they articulated as a fairness or a reasonableness standard. The holy trinity, if you will, of rate regulation is that the rates not be excessive, the rates not be inadequate, and the rates not be unfairly discriminatory, meaning that like to like. So differences in amounts between risks should reflect the differences that those risks represent. But in Illinois, there's no process for the director of insurance to ensure that through a hearing. Our state gives the rates to the director and picks its own. It picks its own rates within a set of statutory constraints that don't include that standard because that is not the legal standard in Illinois. Once upon a time it was, but the legislature allowed that to sunset. But unlike utilities, for example, there is no hearing process. There's no ability for the director of insurance, for example, to say all state, I don't like that. Pick a new rate. Correct? Is that true? No, that is not actually true. Okay. So while there is not a regulation of the rate amount according to that standard that other states have adopted and Illinois has decided not to impose in favor of letting the market decide what's the right amount, Illinois does impose very clear rating requirements along the lines of things that may not be considered and things that must be considered. So, for example, if we look at the memo, one of the memos that plaintiffs attach to their brief, we can see a process by which then-director Nat Schappo concluded that there was a practice that related to rating for all state, which the director felt that that was an unfair and deceptive practice. And so under 429 of the Illinois Insurance Code, Director Schappo called out all state. Ultimately, they reached a settlement as to that, and so there was no need to go forward to a hearing. But there are two types of processes and two types of circumstances where the director can absolutely hold a hearing and look at the rating practice. So what the director has the ability to do is if, for example, all state or any insurance company violated one of the clear articulated either prohibition rules or mandated requirement rules, things that you must do or that you cannot do, the commissioner, sorry, the director has the authority to identify that and to enforce the code and to take the company to a hearing with respect to that particular practice. If there is not a practice that has been expressly prohibited or has been expressly required, if there's a practice which is not articulated in statute, for example, under 424 of the insurance article where there are express articulations of what is considered to be an unfair competitive practice or an unfair or deceptive practice, two of which do deal with automobile regulation. Under 429, there is a more generic process by which the commissioner can go through the exercise of, and as we see from the Cluts Memo, Director Chappell did do exactly that with regard to credit scoring. He was engaged in a process in which he was concerned that insurance companies in Illinois were using credit scoring as part of their rate tiering process. So what rate tier do you get in? Was that auto insurance? Yes, it was auto insurance in the Cluts Memo. Ultimately, the legislature stepped in and passed legislation to decide how credit scoring ought to be used or not to be used. But the process that Director Chappell was using at that time was the 429 process. Likewise, in the consent order that also was attached as Exhibit B to the plaintiff's reply brief, there is reference to a discount. And the director was concerned that Allstate was not applying mandated discounts in the proper way and that its practice was improper, unfair, deceptive. Allstate did not agree, but they were able to come to a resolution and the practice was altered per the terms of the settlement agreement. So what I would suggest to the Court is that while it is true that the State of Illinois does not dictate an amount and does not use the yardstick of excessive, inadequate or unfairly discriminatory, it does not just have unrestrained charge whatever you want. I can't go down the street and sit in an Allstate office and say, what do you feel like charging me today for my auto insurance? There are very clear rules that must be complied with, and the director has the authority to enforce those rules. That is exactly the circumstance that the file rate doctrine is intended to address. I would suggest that the issue is not that the file rate doctrine is not so much the particular yardstick that's used for the particular process, but the fact that at the end of that process there is a legal rate. So Mr. Justice Jackson, in the Montana-Dakota case, utilities case, which is cited by the Supreme Court in Keogh, recited by the Supreme Court, cited by the Supreme Court in the time case, says that the issue here is that the plaintiff has no expectation of a rate other than the legal rate, which has been developed through this process, and that is the case in Illinois. So there are a set of, there is a structure which an insurance company is supposed to consider when they develop their rates. The director then requires that those rates be filed in an informational filing, and the director has the authority to go into that filing, to review that filing, for compliance with the proscriptive rules, and in order to also determine whether, in an overarching matter, they are unfair or they are deceptive. Does the director of insurance have the right to disapprove of the rate? No. Does the director of the insurance have the right to set the rate? No. I mean, isn't that really what the file rate doctrine is aimed at, is whether the state agency has the authority to set, approve, or disapprove the filing? Respectfully, no. Because if that were the case, you would never have it in almost 50 percent of the states that use file use. Well, Illinois is the only state, as I understand it, that allows this kind of filing. That is not the case. So Illinois is the only state in which the legislature has determined that the metric for rate has determined that that particular rating standard of inadequate, excessive, and unfairly discriminatory will not apply, and the market will decide what is excessive or not. But when you look at rating filing processes, there are three types of filing processes. One is called prior use. A slight majority of states do have prior approval. That means you file rates and you're not allowed to use them until there has been a review process by the department, and that can lead to a hearing. Almost equal number of states, just slightly under 50 percent, have what are called file and use. My home state of Maryland, for example, auto rates are file and use. That is, the company files them. They file and then they become effective. They can use them when they file them, and they can use them until such time as the commissioner affirmatively asks for a review, and oftentimes that never happens. Then there are informational filing states, and as I'm standing here now, I can't tell you how many there are. Well, I'm not concerned about any other states except Illinois, but Kong v. American Securities Insurance Company, which is a Seventh Circuit case, and I think all of the cases talk about whether or not the agency, regulatory agency, has the authority to set, approve, and disapprove the filings. And I think you've just agreed with me that Illinois doesn't have that as it respects auto insurance. We do have that as it reflects some utilities and other... Other kinds of insurance, sure, like bankers' compensation. Yeah, absolutely, but not auto insurance. Not one case in Illinois has held that. Because it's a statutory standard. It's not a judicial standard. Oh, I understand. The rating structure is set by the legislature, and the legislature has determined what the standards will be and what the process will be. But those standards and processes apply to every insurance company that comes into Illinois. You can't discriminate against individuals within the same group, although that's their allegations is the more loyal you are, the more you pay. But I'm really talking about the filed rate doctrine and the criteria for the filed rate doctrine, which is what does this agency, the regulatory agency, have the right to do? Isn't that what we should be looking at? Respectfully, no. Okay, tell me why. Well, because what the filed rate doctrine respects is the process by which a rate becomes the rate that must be charged. The process. That's correct. And here there is a process. The process is that there has to be a filing, which then becomes subject to review, just like filing new states. You make a filing which is subject to review. Here the yardsticks are different, but what I don't want to do is conflate the difference between the yardstick and the process. Because, you know, part of the issue here before the Court is that the plaintiff is really asking the Court to adopt a yardstick that the legislature has rejected. The second issue is that when we get to the application of the filed rate doctrine, the case law has not suggested that there must have been an affirmative approval or a hearing on approval versus disapproval in order for the filed rate doctrine to apply. It would never then apply in a file-and-use case, which is not the rate of authority. What is the critical salient point is that the process, the result, is that there is a rate that has to be charged. All states cannot legally charge any rate other than the rate that is in its informational filing. And that's, I think, the key when you use the word informational filing. Who's it informational to? The Department of Insurance. It's also a public filing, so it's available to anybody. But the filing is made with the Department of Insurance. If all states were to not charge that rate, it would be in violation of the Department's rules. So once it has made the filing, they cannot charge anything else. That is the mandate. Do you think there's the same requirement of a utility that they merely file an informational filing? Well, there are certain jurisdictions. No, in Illinois. In Illinois. I have to say that I have read the case law, and I know there are circumstances in the cases that I've read where there is a review option, but not necessarily a prior approval circumstance. But I'm not going to pretend to the Court that I'm an expert in utility rating. Well, but in your research of filed rate doctrines, there's clearly a difference between what an auto insurance company does versus, let's say, a medical malpractice insurance company does. Right? The Illinois legislature has identified different standards, depending on which line of insurance one is talking about. For property and casualty insurance, the Illinois legislature has defined a set of rating standards. The commissioner, the Illinois director, has the ability to review the filing to see if those standards were met. If, for example, we think about some of the express rules that an auto carrier has to comply with, have to include reductions for insured autos that are equipped with anti-theft mechanisms and similar devices. Allstate files an informational filing. The director has the ability to go into that filing and say, did Allstate include a reduction for insured autos that are equipped with anti-theft mechanisms or similar devices? If Allstate did not include that, the director absolutely has the right to come in and say to Allstate, you are in violation of this rule. You must act. That's not the same thing as saying your number, .74, is not okay. But the kind of rating rule, which is what the plaintiff's case is about, the plaintiff's case is about their concern about a rating methodology. That kind of methodology is exactly what the director has authority over, is to go in under his general authority, her general authority, and determine that you didn't comply with these very numerous set of standards and rules that address how an auto carrier must construct their rates. What Illinois doesn't do is say, as a rubric over all of that, we're now going to actually assure that the amount meets this particular standard that other states use. We're going to let the market decide what that amount should be. But that determination, those rules, those rates have to be set within a set of constraints, which the director has the authority to enforce. But the enforcement process just logically, to me, comes after the filing. So Illinois allows an auto insurance company, not just Allstate, I don't want to just pick on you, but your rates do not seem to be under the law subject to being approved or disapproved by the director. The director is limited to enforcement within this rubric. Is that a correct kind of summary? That's true of time. It's true of the entire Motor Carriers Act, now the Supreme Court's whole jurisprudence. There was not a requirement, there was not a mandate that those utility rates be pre-approved in advance. In fact, part of the argument in time was whether or not it was appropriate, because in the Keogh case, while in that case the ICC had actually had a hearing on those particular rates, that was not true in time. And so the question before the court in time was, is that a fact that makes a difference, that the ICC had not actually reviewed the rates in advance because they will file and use. And the Supreme Court said, no, that actually doesn't make a difference in connection with the file rate doctrine and its application. And the answer to that, in my view, the reason for that is because what matters is that there is ultimately, that there is a process, whether it's a big process or a little process, there is a process by which a rate has become the only rate that can be charged. And if we do not hold to that line, then what we have is a circumstance in which you have any number of plaintiffs that can come to any number of courts and question elements of a rating structure that can result in very, very disparate and different results in reasoning. This is also why the primary jurisdiction doctrine comes into play here, because you could have a rating construct or approach that numerous companies can have. You can have a rating construct that differs depending on what the company is, what the year was, what the timing was, and yet it's the plaintiff that happens to go to court and convinces a particular judge or a particular jury. The ask here is that all states' rates be determined to be unusable. So I don't know what all states are supposed to use, given that you've been saying informatively. What do you mean unusable? That they would be enjoined, that there would be judicially constructed new rates of what they should have been, and then damages for the delta. So that is judicial rate making which flies in the face of the construct that the Illinois legislature has determined. Okay. You'll have a chance for it. Thank you very much. Thank you very much. I don't have a sheet. Okay. Mr. Enghoff. How are you today? May it please the Court? I'm Jay Enghoff. I represent Jeffrey and Margaret Corbin and Anna Krafonis. The Illinois Insurance Code is unique in the way that it deals with auto insurance rates. It is the only insurance code in the country that does not require that auto insurance rates not be excessive, inadequate, or unfairly discriminatory. And it's the only insurance code in the country which does not give the insurance commissioner, the insurance director, the authority to either approve or disapprove rates. Now, the filed rate document is based on the principle that private parties and ultimately courts should not be second-guessing the regulatory authority of insurance commissioners to determine that a rate is lawful and to approve or disapprove that rate. Isn't that what you're doing now? I'm sorry? Isn't that what you're doing? You're claiming that the way they created the rate is unlawful and it's a deceptive practice? I mean, aren't you doing exactly what you said is the province of the director? To determine fairness? I'm sorry. Maybe I misunderstood you. My point is that the premise on which the filed rate document is based does not apply in Illinois because that premise presupposes and requires that the insurance commissioner have the authority that there be a rating law. That there be a law that says that rates can't be excessive, inadequate, or unfairly discriminatory and presupposes that the insurance commissioner has some authority to either approve the rate. In some states, the rate can't go into effect unless and until the insurance commissioner approves it. In some states, the rate takes effect automatically, but the commissioner still has the authority to disapprove the rate after it takes effect. What does Illinois have for the director? Illinois has nothing. The director has some enforcement power. No? No. The director, because there is no revenue, there's no standard for the insurance company to meet. It doesn't make sense to say that a rate is, the commissioner has no authority to find that a rate is excessive, inadequate, or unfairly discriminatory in Illinois. So the commissioner can take no action. So because the premise underlying the filed rate document is that private parties should be able to find, to challenge rates that the insurance commissioner has found to be lawful, that has no application in Illinois because the commissioner doesn't have the authority to find the rate lawful. Now, you can see how different our insurance is from other types of insurance that are regulated in Illinois. So let's take the answer to the case which involved medical malpractice insurance. In that case, the statute said, the first line of the statute is, rates cannot be excessive, inadequate, or unfairly discriminatory. And you're saying that there's nothing like that for an auto insurance? No. And she's saying there is. Okay, and what's she, no. She's saying that they still have this framework within which they must operate. So I'm, one says this, one says that, so now where are we? Yes. All state agrees that there is no regular law. And all state agrees that there is no authority for the commissioner to approve or disapprove rates because they're not excessive, inadequate, or unfairly discriminatory. All state agrees with that. That's what they say in their brief. That's what they said in the Klutz case. That's what they say in the Johnson case, that rates are unregulated in Illinois because there's no regular law. What they're saying here, Your Honor, for the first time, is that even though there is no authority for the insurance commissioner to prohibit unfairly discriminatory rates as unfairly discriminatory, because that authority was withdrawn, the legislature withdrew that authority in 1971, their argument in Illinois, unfairly discriminatory rate is simply, unfairly discriminatory rates are, rates exist when two people presenting the same risk are charged different rates. That's all it is, and that's what we're saying here. Because someone is more willing to tolerate a price increase, that person is charged more. That's an, so that's an unfairly discriminatory rate that that person's paying. What all state is saying is, yes, it's true. There is no standard that says that rates can't be unfairly discriminatory. But, that unfairly discriminatory rate can be characterized as an unfair insurance practice under the Unfair Insurance Practices Act. And by so characterizing unfair discrimination as an unfair insurance practice, the commissioner has some authority over that rate. Here's what's wrong with that argument. There are a lot of things wrong with that argument, but let me give you the ones that I think are the two most significant. First, the legislature affirmatively withdrew the commissioner's authority to disapprove unfairly discriminatory rates in 1971. And all state acknowledges this. For the commissioner now to say, well, I don't care that the legislature did that, I'm going to characterize unfair discrimination as an unfair insurance practice, and I'm going to prohibit it as an unfair insurance practice, is counter to legislative intent. But more fundamentally, even if you buy the argument that the commissioner can do that, and I don't think it should be bought because it's counter to legislative intent, but even if you buy that argument, the commissioner does not have the authority under the Unfair Insurance Practices Act to order all state or any company that is doing what we're alleging that they're doing under that statute, under the Unfair Insurance Practices Statute either. And here's why. The Unfair Insurance Practices Statute specifies certain practices as unfair. It designates certain practices as unfair. And most of them have nothing to do with rates. They include such things as falsification of documents, defamation, misrepresentation. But they also include unfair discrimination. There's a blanket prohibition of unfair discrimination. That is, unfair discrimination is an unfair insurance trade practice. That's what the statute says in life insurance. That's Section 236. The Unfair Trade Practices Act also says that unfair discrimination, often unfair discrimination is an unfair practice in health insurance. That's in Section 364. But when it comes to auto insurance, what the statute says is unfair discrimination is an unfair insurance practice, but only if it's based on one of five factors. Only if it's based on race, color, religion, national origin, or disability. For those practices, the commissioner has the authority to disapprove rates based on those factors. So if the commissioner finds unfair discrimination based on one of those five factors, the commissioner can issue a cease and desist order. She can't do anything else. I mean, she can't do anything in addition to that. But she can order a cease and desist. She can issue a cease and desist order. With respect, though, to other types of unfair discrimination, those are not, in auto insurance, those are not unfair insurance practices. Now, because it's clearly inconsistent with legislative intent to say that there is a type of unfair discrimination based on another factor, it can be prohibited under the Unfair Insurance Practices Act. But more importantly, Your Honor, it's inconsistent with the language of the statute because the statute says that if the commissioner thinks that there is another unfair practice, it's not designated in the Unfair Practices Statute. If the commissioner believes it's unfair, what can the commissioner do? What can the commissioner order an insurance company to do? The statute is very clear. The commissioner cannot order the insurance company engaging in such unfair discrimination to do anything. What the insurance commissioner can do is to, as Allstate says in its brief correctly, it can look into it. It can consider it. It can review it. But the commissioner cannot order the insurance company to do anything. All the commissioner can do is to issue a report and go ask the attorney general to ask the court to determine whether a practice is unfair or not. And then it's the court that has the authority to determine whether a practice that is not designated in the Unfair Insurance Practices Act is unfair or not. So, again, let's go back to the theory underlying the file break doctrine. The theory is, the justification is, that you don't want courts interfering with the regulatory authority of the commissioner, of the director, to determine whether a rate is unlawful and to disapprove or approve the rate. Here, there is no such authority on the part of the director. To the extent that the authority exists, it's the court's authority. So, again, the rationale for the file break doctrine disappears. What Allstate is trying to do, but the real rivalry, is that the inability of the director to order a remedy under a statute that she administers. The what? I didn't hear you. Oh, I'm sorry. What Allstate is arguing is that the inability of the director to order a remedy under a statute that she administers, and it's indisputable that under the Unfair Practices Act she has no authority to order Allstate or any other company to stop doing what we believe that they're doing. Allstate is trying to use that inability of the director to order a remedy under a statute that she administers to argue that plaintiffs shouldn't have the ability to obtain a remedy under a statute which clearly authorizes a remedy. And to use that to argue that courts shouldn't have the authority to order a remedy under a statute which clearly gives them that authority. That's not what the file break doctrine was intended to do. It's particularly clear with under Section 432 of the Unfair Trade Practices Act, which makes clear that the remedies under the Insurance Trade Practices Act are cumulative to other remedies. Let me just say a little bit about the primary jurisdiction argument. The argument really is based on the same principle. The questions it presents are the same. An agency has primary jurisdiction when it has the authority to take action, when it has the authority to order a meaningful remedy. So, for example, in the Keating case, the Workers' Comp Commission does have the authority to order a meaningful remedy. The court said because they do have that authority, the agency has primary jurisdiction. But the Keating case cited the NL Industries case, which by contrast concerned a situation where the agency had no authority to order a remedy, and so the court held that the agency did have primary jurisdiction. Same thing here. The Department does not have authority to order any kind of remedy. Let me ask you a question before your time runs out. You've been focusing on the remedy, the Unfair Trade Practices Act. They're saying that at the time of filing, they have to comply, and that's the key to their cases. At the time they file, it can't be discriminatory, et cetera. How do you respond to that, that it's the filing that the director has authority over? I respond respectfully, Your Honor, that that's just not true. The company does not need to comply with any standard when it files, because there is no statement saying that rates can't be excessive, inadequate, or unfairly discriminatory. So there's nothing in Illinois law that says rates cannot be excessive, unfairly discriminatory, or inadequate. For auto insurance, that's exactly right. But I can't emphasize to you enough the gulf between the Illinois auto insurance rating statute and the statute in every other state in the country, and it actually goes beyond that. The Illinois statute with respect to auto insurance is not just unique among insurance codes. It's unique among all regulated industries. In all regulated, and we have that in our little chart, which is Exhibit C in my brief, where we go through all the cases that were cited in this case, and in all those cases, whether it's insurance or communications or trucking or utilities, in any regulated industry, there is always a rating law, there's always a standard. In insurance, it's excessive, inadequate, or unfairly discriminatory. In some of these other cases, it's fair and reasonable or just and reasonable. But there's always a standard, and there's always some authority of the commissioner, of the regulator, to approve or disapprove the rates. Sometimes the rate can't take effect unless and until the commissioner approves it. As I said earlier, sometimes the rate takes effect, but the commissioner has the authority to disapprove it. But there's always some approval authority. Illinois is unique. And in addition, under the Unfair Insurance Trade Practice Act, the statute couldn't be clearer under Section 429, the commissioner, as the director, has no authority to order a company engaged in the practice we allege that Allstate is engaging in. The director has no authority to order Allstate to do anything. So, just to sum up, Your Honor, there's no rating law in Illinois, there is no authority on the part of the commissioner, the director, to approve or disapprove auto insurance rates, and the commissioner has no authority under the Unfair Insurance Practices Act to order an insurance company not to engage in the practice that we allege Allstate is engaging in. The filed rate document was never meant to be an absolute immunity for auto insurance companies. Were the filed rate document to be adopted under Illinois law, it would provide that immunity. Thank you very much. Okay. No questions. Rebecca? Thank you very much. I'll be brief. I just want to highlight a few points. I appreciate that, and we do not disagree, that the Illinois legislature does not impose an inadequate, excessive, or unfairly discriminatory standard as the basis for the rate selection. But the Illinois legislature does impose a set of rules by statute that constrain rate selection. Okay. Now, what's the difference in what you said? Sure. Not impose, but does not constrain. Well, the difference is saying when you set your rates, you cannot consider certain things. You cannot consider rates. You cannot consider disability in certain instances. You cannot consider, if we look specifically at the regulation or at the statute, if we look at 524 specifically, the defined terms, the defined unfair methods of competition or unfair or deceptive trade practices act, 424.3, says expressly, making or permitting in the case of insurance of the types enumerated in Class 1, 2, 3 of Section 4, that includes auto, any unfair discrimination between individuals or risks of the same class or of essentially the same hazard and expense element because of the race, color, religion, or national origin of such insurance risks or application. For that is a circumstance in which there cannot be unfair discrimination with respect to those characteristics. Do you agree, though, with Mr. Enghoff that the Director, Commissioner, has no authority under the Unfair Insurance Practice Act to do anything with regard to auto insurance companies? I absolutely disagree with him. Why? Well, because 424 gives him the authority, and I believe that was when Mr. Enghoff acknowledged, was that with respect to the defined practices, the Commissioner absolutely can issue a cease and desist order and enjoin those practices. He cites 432. Well, he, Mr. Enghoff contends that under 429, which are the undefined practices, that that is where the Director lacks the authority himself to enjoin the act. And if we look at 429, what it tells us is that if the Commissioner believes, the Director believes that there is a practice which is unfair or deceptive, there's a process. There's an investigatory process. There's a hearing process. There's a report that comes out. And the Commissioner, the Director can come to the courts to seek the injunction. So going back to the, I guess, the three key words and the file grade doctrine, it's true that the Director can't set approve or disapprove of them. All he can do is, as Mr. Enghoff indicated, make a report, but he still has to go to the court. Respectfully, no, because it depends on what the wrongful act is. No, but under the section you just cited, the Director cannot, the agency does not independently have the power. The agency must go to the court. If the agency finds that there has been a violation of one of the expressed statutory requirements, the agency does not have to go to court. The agency has the authority to enforce the code and to do so through a cease and desist order. If there is a practice which is not defined, there is no express prohibition, but the Director believes that there is an unfair practice occurring, in that instance the Director goes through an administrative process first, because that's what the legislature has determined, that the expert in this area, the state agency, ought to look at the practice first using independent experts. And then if the administrative agency concludes, then in that event it can be enforced through the courts. It gets back to the courts, but it gets to the courts through the Director, who is himself the expert in this area. And we know that that happens because we can look at the materials, the stipulation and consent order, for example, that all states signed, that relate directly to Matt Schappo, who is cited in the Cohen case by the Seventh Circuit, and what he did when he was actually Commissioner. And one of the things I think it's important to note is that to really look at what all states' position is, if we look at Matt Trott's memo, I'll just leave you with this quote, which is the Director states in his March 13, 2001, letter that the, and this is a quote of the Director, quote, fact that the Department does not set or approve rate amounts does not mean that we cannot and should not review the manner in which consumers are assigned to a rating category to determine if the practices are unfair or deceptive, which is the issue here. All states' response? Okay. We agree. I can't do that. Okay. But thank you very much. Okay. This matter will be taken under advisement, and we will issue an order in due course. Thank you for your arguments this afternoon. It's good to see you both.